BERGERON *v.* BELISLE.

1. Sales—Directed Verdict.

In buyer's action for trade-in value of his old automobile on defendant's failure to deliver new car, plaintiff's testimony *held,* to establish that he dealt with corporation and not defendant personally, and that verdict should have been directed in defendant's favor.

2. Corporations—Effect of Failure to File Report.

Claim of automobile buyer that he dealt with defendant personally, and that latter was not agent of corporation because it had failed to file its annual report and had thereby forfeited its charter, *held,* without merit.

On forfeiture of charter as not self-executing, see 8 L. R. A. 499.

3. SAME—FORFEITURE LAW NOT SELF-EXECUTING.

> Law respecting forfeiture of charter through corporation's failure to file report and pay fees is not self-executing, but requires judicial proceeding to declare and enforce such forfeiture.

Appeal from Wayne; Stone (John G.), J., presiding. Submitted October 13, 1931. (Docket No. 86, Calendar No. 35,700.) Decided December 8, 1931.

Assumpsit by Raymond Bergeron against Henry W. Belisle under the common counts and under a contract for the purchase of an automobile. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Fred M. Breen,* for plaintiff.

*Joseph E. Rau,* for defendant.

Butzel, C. J. In 1925, Raymond Bergeron, plaintiff, purchased a Chrysler automobile from Belisle & Noonan Sales Company, a corporation engaged in the automobile business at a building at 10293 W. Jefferson avenue, River Rouge, Michigan, where its name was prominently displayed. Both Belisle and Noonan were officers of the corporation engaged in the sale of cars. In 1926, Belisle also conducted a service garage where he conditioned cars belonging to the corporation. This was a private enterprise of his own. The garage was on a less important street and two blocks from the corporation's place of business. Plaintiff at times took his car to defendant's garage in order to use its facilities.

On August 15, 1926, defendant resigned as president of the corporation. He sold his stock to Noonan and another party. Defendant, however, continued

to do service work at his garage, and to act as salesman for the corporation. On October 14, 1926, plaintiff on a visit to defendant's garage was attracted by a new Chrysler car and became interested in trading his old car for a new one. He met defendant and Noonan at the salesroom of the corporation, where, after Noonan appraised the value of the old car, a contract of purchase was entered into. Plaintiff was allowed the sum of $1,250 as part payment on the new car, and immediately delivered the old car and his certificate of title to the corporation. He was not to receive his new car until the following March. He claims that the assignment of the certificate of title was signed in blank, though it runs to the corporation. Noonan acted as notary on the assignment. The order for the new car distinctly states that it would not be, binding on the "company" unless accepted by an officer or an authorized representative. The indorsement on the order was "accepted by the company" by "Salesman H. W. B." The wording of the order given by plaintiff shows that it was given to the corporation and not to defendant personally. The corporation did not pay the fee for filing its annual report for the year ending December 31, 1925, until September 11, 1926. It was not accepted by the secretary of State until October, 1930, when the fee was paid.

In March, 1927, defendant failed to turn over the new car in accordance with the agreement. The corporation was adjudicated a bankrupt. Plaintiff demanded payment for the old car, and Noonan gave him his personal note for $1,250. Defendant, when requested, refused to indorse the note. Plaintiff kept the note and produced it at the trial. It has never been paid. Plaintiff sued the defendant for the value of the old automobile turned over to the

corporation. He claims that his dealings were with defendant personally and not with the corporation. In an additional count to the declaration, he charges that the corporation had suspended operations through failure to file the annual report and that defendant was therefore liable on the theory that he acted for a principal who no longer existed. He further charges that defendant knew of the insolvency of the corporation in October, 1926, and was guilty of fraud in withholding this knowledge from plaintiff. There were two trials of the case. On the first trial, plaintiff recovered a judgment which was set aside and a new trial granted. On the second trial, being the instant case, defendant moved for a directed verdict which was reserved under the statute. Defendant made a motion to enter judgment *non obstante veredicto,* immediately after the jury brought in a verdict for plaintiff. The motion for a judgment *non obstante veredicto* was properly granted. Plaintiff tried to show that his contract was with defendant, but, by the great weight of the evidence, he established the fact that it was with the corporation. A verdict in defendant's favor should have been directed at the conclusion of the testimony of plaintiff. There is no merit in plaintiff's second claim that defendant was not an agent of the corporation because it had failed to file its annual report and thereby forfeited its charter. The corporation had not suspended operations at the time of the transaction. The provisions of the law respecting the forfeiture of charter through a corporation's failure to file a report and pay the fees are not self-executing. The law then in force required a judicial proceeding to declare and enforce such forfeiture by the State. *Turner* v. *Western Hydro-Electric Co.,* 241 Mich. 6. There was no testimony

to show that defendant knew of the alleged insolvency of the corporation in October, 1926, nor was the insolvency shown.

The judgment of the lower court is affirmed, with costs to defendant.

WIEST, CLARK, MCDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.